# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES RIFFIN** | CIVIL ACTION |
| *Plaintiff-Pro se* | |
| | NO. 17-5685 |
| v. | |
| | |
| **CONSOLIDATED RAIL CORPORATION** | |
| *Defendant* | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                              JANUARY 30, 2019

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) by Defendant Consolidated Rail Corporation ("Defendant" or "Conrail"). [ECF 11]. In its motion, Defendant argues, *inter alia*, that Pennsylvania's champerty doctrine invalidates the assignment of claims on which Plaintiff James Riffin ("Plaintiff" or "Riffin") solely relies to support his standing to bring the underlying claims. Plaintiff has opposed the motion. [ECF 15].

The issues raised in the motion have been fully briefed and are ripe for consideration.[1] For the reasons stated herein, Defendant's motion to dismiss is granted.

### BACKGROUND

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in Plaintiff's complaint and construe the facts alleged in the light most favorable to Plaintiff.

---

[1]   This Court has also considered Plaintiff's Errata, [ECF 16], Defendant's reply, [ECF 19], and Plaintiff's reply, [ECF 21].

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Briefly, the facts relevant to the disposition of the underlying motion to dismiss are as follows:[2]

> Conrail was formed after a "rail transportation crisis seriously threatening the national welfare was precipitated" by the successive bankruptcies of "eight major railroads in the northeast and midwest region of the country." *Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 102, 108 (1974). Congress established the United States Railway Association (the "USRA") and empowered it to analyze the properties of the bankrupt railroads and designate in a Final System Plan ("FSP") those properties that would be acquired by Conrail. *See Conrail v. STB*, 571 F.3d 13, 14-15 (D.C. Cir. 2009). Yards, connecting spur and storage tracks, and other ancillary properties were automatically conveyed to Conrail along with any associated rail lines designated for conveyance. *Id.*
> 
> Among the properties the USRA conveyed to Conrail pursuant to the FSP was the so-called "Harsimus Branch" line. On July 12, 2005, Conrail sold a portion of its Harsimus Branch line (the "Property") to a group consisting of eight developers (the "LLCs") for $3 million. Each LLC took title to a one-block section of the line. Vested Title, Inc., as the agent of Chicago Title Insurance Company ("Chicago Title"), issued eight title insurance policies, one to each of the LLCs. Notably, prior to the July 12, 2005 sale, Conrail neither sought nor obtained the requisite authority from the Surface Transportation Board ("STB" or "Board") to abandon the line or to discontinue service on the line.
> 
> In January 2006, the city of Jersey City, New Jersey ("Jersey City") and other parties petitioned the STB to begin a declaratory action proceeding to determine whether the portion of the Harsimus Branch that included the Property constituted a "line of railroad" requiring abandonment authority from the Board under 49 U.S.C. §10903, or was, instead, ancillary "spur track" not subject to the

---

[2] The facts set forth below are primarily taken from Plaintiff's complaint. The recitation of relevant facts, however, includes some facts which are taken from various public records and judicial opinions attached to Defendant's motion to dismiss. It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "matters of public record, including court files and records, documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All of the facts have been construed in Plaintiff's favor.

STB's abandonment authority. In August 2007, the STB issued a decision concluding that the Harsimus Branch had been conveyed to Conrail as a line of railroad subject to federal abandonment regulation.

Both Conrail and the LLCs petitioned for review in the D.C. Circuit. The D.C. Circuit vacated the STB's decision, holding that the Board lacked jurisdiction to determine the status of the Property because a "Special Court" created by Congress had exclusive jurisdiction to interpret the FSP under which the Property was conveyed to Conrail.

On October 7, 2009, Jersey City and others filed a complaint in the United States District Court for the District of Columbia (sitting as the Special Court), seeking a determination that the Harsimus Branch was conveyed to Conrail as a line of railroad subject to STB jurisdiction. On July 10, 2012, Jersey City and the LLCs stipulated that the Harsimus Branch was conveyed to Conrail as a line of railroad subject to the STB's abandonment authority. Conrail neither joined nor opposed the stipulation. On September 30, 2013, the Special Court granted summary judgment for Jersey City, "[g]iven that the parties have now stipulated that the Harsimus Branch was conveyed to Conrail as a line and not a spur." *City of Jersey City v. Conrail*, 968 F. Supp.2d 302, 307 (D.D.C. 2013), *aff'd*, 2014 WL 1378306 (D.C. Cir. 2014).

While the above matters were making their way through the federal courts in the District of Columbia, the LLCs were engaged in a dispute with their title insurance provider, Chicago Title. In February 2006, the LLCs made a written demand to Chicago Title that Chicago Title provide for the defense of the LLCs in connection with their defense of title to the Property, as required under the title insurance policies. On October 25, 2007, Chicago Title disclaimed coverage and refused to provide the LLCs with any defense of the LLCs' titles. On November 17, 2009, the LLCs filed a complaint in New Jersey state court against Chicago Title. On April 29, 2011, the state court held that Chicago Title did have an obligation to defend the LLCs against the attacks on the LLCs' titles. A New Jersey appellate court affirmed that decision on May 20, 2015, and remanded the matter.

Following the remand to the New Jersey trial court, Chicago Title and the LLCs entered into a settlement agreement. The settlement agreement included the following terms:

1. Chicago Title agreed to pay the LLCs $5 million in exchange for a mutual release of all claims;
2. Chicago Title waived, released, and relinquished "any and all rights of subrogation" against Conrail; and
3. Chicago Title's existing third-party action against Conrail was not affected.

Plaintiff and Conrail in the case *sub judice* dispute the legal effect that this settlement agreement and Chicago Title's then ongoing litigation with Conrail had on any "rights of subrogation" belonging to the LLCs. Plaintiff contends that the subrogation rights belonging to Chicago Title were effectively assigned to the LLCs and, subsequently, assigned to him.

In support of its motion to dismiss, Defendant has attached a copy of the purported assignment agreement (the "Assignment Agreement") on which Plaintiff relies to support his standing to assert claims in this matter purportedly belonging to the LLCs. Notably, Plaintiff does not challenge the authenticity of this document but, instead, relies upon it in his opposition to support his standing in this matter. The Assignment Agreement was executed on December 12, 2017, by Plaintiff and Steve Hyman, who was the husband of Vicki Hyman, the sole member of the eight LLCs. Pertinent to this Court's adjudication of Defendant's underlying motion, the Assignment Agreement provides that the LLCs "shall incur no expenses" associated with any litigation Riffin may choose to bring pursuant to the claims assigned to him by the LLCs and that Riffin would retain a portion of any proceeds recovered from any such litigation.

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

4

possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

Complaints and submissions filed by *pro se* litigants are subject to liberal interpretation and are held "'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the court must still ensure that a *pro se* complaint contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

## DISCUSSION

In this matter, Plaintiff essentially challenges Conrail's 2005 sale of the Property to the eight LLCs identified in Plaintiff's complaint. Plaintiff was neither a party to the 2005 transaction nor a member of the LLCs. Plaintiff, however, asserts that he has legal standing to ask this Court to declare that Conrail's conveyances to the LLCs were unlawful. To support his standing argument, Plaintiff relies on the 2015 Assignment Agreement obtained, not from the LLCs, but from Steve Hyman, the husband of the sole member of the LLCs.

5

In its motion, Defendant argues various grounds for dismissal, including, *inter alia,* that the Assignment Agreement is unenforceable under the Pennsylvania *champerty* doctrine. Simply stated, the champerty doctrine invalidates an assignment of claims where, *inter alia*, the assignee has no interest in the suit *but for* the assignment.[3] In his response, Plaintiff argues that the validity of the Assignment Agreement is governed by New Jersey law, which does not recognize or apply the champerty doctrine, not Pennsylvania law as Defendant contends and, therefore, Defendant's motion lacks merit. In light of this dispute, this Court must first determine which state's substantive law applies to this issue.

When a federal court exercises federal question jurisdiction, as is the case here, the court must apply the choice-of-law rules of the forum state. *Neopart Transit, LLC v. Management Consulting, Inc.*, 2017 WL 714043, at *11 (E.D. Pa. Feb. 23, 2017) (citations omitted); *Noye v. Johnson & Johnson*, 310 F. Supp. 3d 470, 475 (M.D. Pa. 2018) (applying Pennsylvania choice-of-law rules in action premised on federal question jurisdiction).[4] Because this matter was filed in the United States District Court for the Eastern District of Pennsylvania, Pennsylvania's choice-

---

[3] Champerty is defined as a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." Black's Law Dictionary (6th ed. 1990).

[4] The Third Circuit has instructed that before a district court applies the applicable choice-of-law analysis it must first determine whether a conflict of law actually exists pursuant to a three-step inquiry. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). This inquiry includes, first, a determination whether an actual or real conflict exists between the laws of the jurisdictions at issue. *Id.* If there is an actual conflict, the court "must proceed to the second prong of the inquiry and determine if this is a true or false conflict." *Id.* at 232. A "true conflict" arises only if "'*both* jurisdictions' interests would be impaired by the application of the other's laws." *Id.* at 230 (emphasis in original). If a "true conflict" exists, then the court proceeds to step three and must engage in a "deeper choice-of-law analysis" to determine which jurisdiction has the "greater interest in the application of its law." *Id.* (citing *Cipolla v. Shaposka*, 267 A.2d 854 (Pa. 1970)).

At the outset, this Court finds that an actual conflict exists between the law of Pennsylvania and the law of New Jersey with respect to the application of the champerty doctrine. Pennsylvania has long applied this doctrine to invalidate certain assignments of claims, while New Jersey no longer applies this doctrine.

of-law rules apply here. This choice-of-law analysis is "issue-specific." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

The Pennsylvania Supreme Court in *Griffith v. United Air Lines*, 203 A.2d 796 (Pa. 1964) adopted a flexible choice-of-law rule requiring an "analysis of the policies and interests underlying the particular issue before the court" and a determination of which jurisdiction has the greater interest in the application of its law. *Id.* at 806; *see also Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010). Under this analysis, this Court finds that Pennsylvania law applies. In making this determination, this Court finds persuasive the decision of the United States District Court for the District of Columbia in *Koro Co., Inc. v. Bristol-Myers Co.*, 568 F. Supp. 280 (D.D.C. 1983). In *Koro*, the court determined that New York law of champerty, rather than New Jersey law (which did not recognize the champerty doctrine), applied to invalidate the assignment of claims. Applying a similar "significant relationships test," the *Koro* Court wrote:

> it is necessary for the Court to assess the governmental policies underlying the conflicting laws and the interests of each state in having its law applied to the facts under review. Here, New York has a clearly enunciated public policy against champerty, in the form of §489 of the Judiciary Law, whereas New Jersey has no stated policy against champerty, but it no longer recognizes the doctrine. In such a situation, New York clearly has the stronger interest in the enforcement of its policy. Application of New York law would frustrate no New Jersey policy, whereas application of New Jersey law would certainly impair the purpose underlying the New York statute, namely the prevention of trafficking in litigation claims.
>
> It should also be noted that this forum, the District of Columbia, has an interest in applying the law that most conforms to its own. Champerty is prohibited in the District of Columbia, as it is in New York. The same is true under federal common law, as it has been interpreted by this Court. In light of all of these considerations, the Court concludes that the application of New York's law prohibiting champerty is an appropriate choice of law in this case.

*Koro*, 568 F. Supp. at 286–87.

7

Here, Plaintiff chose to file his action against Defendant, a Pennsylvania corporation, in a federal court in Pennsylvania. Plaintiff's purported standing to bring this action rests entirely upon the validity of the assignment of the LLC's purported rights to Plaintiff by Steve Hyman, the husband of the sole member of the LLCs and a resident of New York. In applying the champerty doctrine, Pennsylvania has a clearly enunciated public policy against the enforcement of assignments of legal claims that violate champerty. Though New Jersey no longer recognizes the champerty doctrine, the application of Pennsylvania law of champerty would not frustrate any New Jersey policy. While on the other hand, the application of New Jersey law would impair Pennsylvania's long settled application of the doctrine to preclude certain claims assignments. In addition, Pennsylvania has a significant interest in applying its own laws to its citizens, including Defendant. In light of these factors, this Court finds that Pennsylvania has the greater interest in applying its law to the present issue and, accordingly, will apply Pennsylvania's champerty doctrine to the underlying Assignment Agreement.

Under Pennsylvania law, an assignment offends the public policy against champerty and is unenforceable if the assignment provides for the institution of litigation by and at the expense of a person who, *but for* the agreement, has no interest in the litigation, with the understanding that his or her reward is to be a share of whatever proceeds the litigation may yield. *Richette v. Pennsylvania R.R.*, 187 A.2d 910, 918 (Pa. 1963). Thus, Pennsylvania's champerty doctrine invalidates an assignment of claims "when the party involved: (1) has no legitimate interest in the suit, but for the agreement; (2) expends his own money in prosecuting the suit; and (3) is entitled by the bargain to share in the proceeds of the suit." *Dougherty v. Carlisle Transp. Products, Inc.*, 610 F. App'x 91, 93 (3d Cir. 2015) (quoting *Frank v. TeWinkle*, 45 A.3d 434, 438-39 (Pa. Super. Ct. 2012)).

Here, Plaintiff has proffered no interest in this litigation against Defendant Conrail beyond that which he purportedly acquired by the assignment of claims by Steven Hyman, on behalf of the LLCs. The assignment itself provides that Plaintiff is to finance the lawsuit with his own funds and that he is entitled to share in the proceeds of the suit. These facts make this assignment fall squarely within the applicable champerty doctrine; the assignment is, therefore, invalid. Accordingly, Plaintiff lacks the standing to bring any claims against Defendant Conrail. Consequently, Defendant's motion to dismiss is granted.

**CONCLUSION**

For the reasons stated herein, the Assignment Agreement on which Plaintiff relies to support his standing to assert the claims in this matter is invalid under the champerty doctrine. As such, Defendant's motion to dismiss is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J*